IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| PAUL N. ECKERT and | : | CHAPTER 13 |
| ROXANNE ECKERT | : | |
| | : | |
| Debtors | : | |
| | : | |
| CHARLES J. DEHART, III | : | |
| STANDING CHAPTER 13 TRUSTEE | : | CASE NO. 5-10-bk-09573 RNO |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL N. ECKERT and | : | |
| ROXANNE ECKERT | : | |

# **OPINION**[1]

This case raises a question of first impression in this district. Where a joint debtor's income increases, can the Chapter 13 trustee, nearly one year after confirmation, move to require modification of the plan to increase the monthly payment amount? I find that, on the facts presented, he cannot.

**I. Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**II.    Procedural History**

The Debtors, Paul N. Eckert (" Mr. Eckert") and his wife, Roxanne M. Eckert ("Mrs. Eckert"), filed a voluntary petition under Chapter 13 of the Bankruptcy Code on November 29, 2010. Mr. and Mrs. Eckert are sometime hereinafter referred to as the "Debtors."

---

[1]    Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

The case docket shows that the Debtors filed their required schedules and statements pursuant to 11 U.S.C. § 521 of the Bankruptcy Code.[2] An original Chapter 13 plan was filed on November 29, 2010; that plan was objected to by the standing Chapter 13 trustee, Charles J. DeHart, III ("Trustee"). The Objection alleged, in part, that the Debtors had not committed their projected disposable income to the plan, as required.

The Debtors filed their First Amended Plan on February 9, 2011 ("Amended Plan"). The Trustee, in turn, objected alleging that the Amended Plan did not meet the requirements of § 1325(a)(4) of the Bankruptcy Code. This provision essentially requires that the value of the distributions to unsecured creditors under the plan not be less than the distribution to such creditors under a hypothetical Chapter 7 liquidation.

The Trustee subsequently withdrew his Objection to the Amended Plan. The Amended Plan was confirmed on April 28, 2011.

There was an absence of docket activity in the case until April 19, 2012, when the Trustee filed his Trustee's Motion to Require Modification of Plan ("Modification Motion"). The Modification Motion alleged that "income of the debtors has increased substantially above the amount reported by the debtors prior to confirmation of the plan." Trustee's Mot. to Require Modification of Plan ¶ 2.

The Modification Motion requested that, effective May 1, 2012, the Amended Plan be modified to increase the Debtors' monthly payment, going forward, from $500.00 to $ 2,500.00. The Debtors objected to the Modification Motion. The Debtors' Objection questions some of the

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

factual predicates of the Modification Motion and allege that the "Chapter 13 Trustee's request to increase plan payments violates the finality of a Confirmed Chapter 13 Plan pursuant to 11 U.S.C. § 1327." Debtors' Answer and Objections to the Trustee's Mot. to Require a Modification of Their Confirmed Chapter 13 Plan ¶ 3.

A hearing was held on the Modification Motion on August 28, 2012. At hearing, both of the Debtors testified. Post-hearing briefs were subsequently filed. On December 18, 2012, a hearing was held to allow final argument by counsel for the Trustee and the Debtors. This matter is now ripe for decision.

**III.    Discussion**

The Modification Motion implicates § 1329 of the Bankruptcy Code which provides, in part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the *trustee*, or the holder of an allowed unsecured claim, to-
>
> > (1) *increase* or reduce the amount of payments on claims of a particular class provided for by the plan
> > . . .

11 U.S.C. § 1329(a)(1) (emphasis added).

Section 1329 requires that a Chapter 13 plan modification comply with some of the same requirements which must be met for confirmation of a plan. The confirmation requirements are codified in § 1325 of the Bankruptcy Code. The following sections of this Opinion, in part, will discuss which of § 1325's requirements are and are not implicated by the Modification Motion.

3

The Trustee advanced several arguments in support of the Modification Motion. He contends the principle that confirmation is res judicata as to all issues that were or could have been decided at confirmation is inapplicable here. He argues the principle does not apply because "§ 1329 of the Bankruptcy Code provides a means to change the binding effect of confirmation." Trustee's Br. in Supp. of Mot. to Require Modification of Plan Pursuant to § 1329, 4.

The Trustee also asserts that the record, which reflects a post confirmation increase in Mr. Eckert's earnings, justifies an upward modification in the monthly plan payment amount.

The Trustee maintains that statutory references which § 1325(a) of the Bankruptcy Code makes to § 1325(b) impliedly make the § 1325(b) requirements applicable to § 1329 modifications. Trustee's Br. in Supp. of Mot. to Require Modification of Plan Pursuant to § 1329, 6.

I understand a portion of the Debtors argument to be that taking a second look at the Debtors' projected disposable income, nearly one year post confirmation, is an improper attempt to relitigate an issue that was disposed of at confirmation.

A. **Motions to Modify and the Burden of Proof**

It is well settled that a Chapter 13 debtor bears the burden of persuasion on whether a proposed plan meets the elements required for confirmation pursuant to § 1325. *In re Martorana*, No. 07-13861bf, 2008 WL 1745784, at *2 (Bankr. E.D. Pa. April 11, 2008); *In re Brown*, 244 B.R. 603, 607 (Bankr. W.D. Va. 2000); *In re Norwood*, 178 B.R. 683, 687 (Bankr. E.D. Pa. 1995); *In re Fricker*, 116 B.R. 431, 437 (Bankr. E.D. Pa. 1990). Similarly, the proponent of a plan modification bears the burden of proof that the statutory requirements have

4

Case 5:10-bk-09573-RNO    Doc 56    Filed 01/14/13    Entered 01/14/13 09:39:41    Desc
Main Document      Page 4 of 15

been met. *In re Robenhorst*, No. 10-25094-svk, 2011 WL 1434696, at *1 (Bankr. E.D. Wis. April 14, 2011); *In re Coay*, No. 09-71814, 2012 WL 2319100, at *7 (Bankr. C.D. Ill. June 19, 2012).

        **B.**       **Evidence of Post-Confirmation Change in Income**

Here, the Modification Motion was triggered by the Trustee's belief that Mr. Eckert benefitted from a post-confirmation increase in his earnings. The evidentiary record shows that Mr. Eckert, despite his apparent efforts to remain continuously employed, has suffered from significant forces of change which are beyond his control. At the time he testified, Mr. Eckert was fifty-nine years old; his household included Mrs. Eckert and their twenty-one-year-old daughter, a full time college student. Trial Tr. vol. 1, 7, August 28, 2012. Mr. Eckert testified that he was unemployed at the time of the April 2010 bankruptcy petition, that unemployment was caused by the closure of a former employer in Allentown, Pennsylvania ("Employer 1"). Trial Tr. vol. 1, 8, August 28, 2012.

Mr. Eckert testified that, post petition, he obtained employment as an industrial mechanic for JCPenney in Brenigsville, Pennsylvania ("Employer 2"). Trial Tr. vol. 1, 9, August 28, 2012. In May 2012, Employer 2 closed the plant where Mr. Eckert was working. He was again unemployed briefly, until June 2012, when he began work as an industrial mechanic with Straight Arrow Products, Inc. ("Employer 3"). Trial Tr. vol. 1, 11-12, August 28, 2012.

Mr. Eckert's earnings from Employer 3 are the genesis of the Modification Motion. He had only worked for Employer 3 for approximately three months at the time of the hearing on the Modification Motion. He testified that he was working some mandatory overtime. He also stated that there was no guarantee that overtime would continue. To that point he said, "I'm

5

hoping to get away from overtime, 50 hours a week on my feet is a lot for me." Trial Tr. vol. 1, 15, August 28, 2012.

Mrs. Eckert briefly testified at the hearing on the Modification Motion. She testified that she continued to hold the same job she held at the time the Amended Plan was confirmed. She stated the only changes are the name of her employer and that all overtime work has been eliminated. Trial Tr. vol. 1, 25-29, August 28, 2012.

My review of Schedule I - Current Income of Individual Debtor(s) and Schedule J - Current Expenditures of Individual Debtor(s), which were filed in the Chapter 13 case, provided additional information regarding any post-confirmation change in income. Original Schedules I and J were filed on the November 29, 2010, petition date. Amended Schedules I and J were filed on February 9, 2011.

A bankruptcy judge may take judicial notice of his or her own docket. *In re Argus Group 1700, Inc.*, 206 B.R. 737, 742 (Bankr. E.D. Pa. 1996). I view taking judicial notice of the items on the docket to be largely a simplified manner of authenticating documents. A bankruptcy judge may take judicial notice of the Court's records pursuant to Federal Rule of Evidence 201. However, the truth of the contents of those records is not inferred by a judge taking judicial notice of the records. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008). Adjudicative facts must still be determined by the consideration of admissible evidence. I take judicial notice of the contents of the Debtors' schedules.

At the time of the hearing on the Modification Motion, Mr. Eckert's recent pay stub from Employer 3 was introduced into evidence as Exhibit C. It shows weekly net earning of approximately $820.00, which would equal about $3,500.00 a month. I note that the August

6

2012 weekly pay stub includes eleven hours of overtime, which is paid at a higher rate. The $3,500.00 figure is higher than the $2,573.60, average monthly earnings, contained in the February 9, 2011, amended Schedule I. I find that this represents a post-confirmation increase of approximately 36% in Mr. Eckert's earnings.

After consideration of the record, I find that Mr. Eckert's earnings increased post confirmation and that the amount of Mrs. Eckert's earnings remain essentially unchanged post confirmation.

### C.    Grounds for Plan Modification

I am tasked to determine whether the Trustee has met his burden regarding the Modification Motion. It seems that a critical starting point is the language of § 1329 of the Bankruptcy Code.

When the statute's language is plain, the sole function of the Courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed.2d 1 (2000); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L.2d 1024 (2004); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed.2d 290 (1989); *In re Price*, 370 F.3d 362, 268 (3d Cir. 2004); *In re Williams*, 346 B.R. 361, 365 (Bankr. E.D. Pa. 2006).

I mentioned in the beginning of this section that § 1329 makes some of the plan confirmation requirements applicable to post-confirmation plan modifications. Specifically, § 1329(b)(1) provides, "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this

7

section."

I have previously noted that the requirements for modification are less stringent than the requirements for plan confirmation. *In re Lopatka*, 400 B.R. 433, 439-40 (Bankr. M.D. Pa. 2009). Section 1329 expressly makes certain confirmation requirements applicable to modified plans; other confirmation requirements are not referenced. *In re Forte*, 341 B.R. 859, 868 (Bankr. N.D. Ill. 2005). The only reference to § 1325(b) appears in § 1329(c) which provides that a modified plan generally may not provide for payments over a period that expires after the applicable commitment period under § 1325(b)(1)(B). *In re Stonier*, 417 B.R. 702, 704-05 (Bankr. M.D. Pa. 2009). Most significantly for the instant case, I note that § 1329 does not make the general confirmation requirements applicable to plan modifications. Here, the Amended Plan was confirmed on April 28, 2011.

I have found no controlling Third Circuit precedent on whether the post-confirmation increase in Mr. Eckert's earnings is grounds for the Modification Motion. As I noted earlier, this is an issue of first impression in this district.

Some other circuits have determined that a "substantial and unanticipated post-confirmation change" in a debtor's financial circumstances is grounds for plan modification. *See In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007) (sale of condominium for 51% more than its scheduled value constituted a substantial and unanticipated change in financial condition); *In re Hoggle*, 12 F.3d 1008, 1011 (11th Cir. 1994) (Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation); *In re Anderson*, 21 F.3d 355, 358 (9th Cir. 1994); *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989) (post confirmation 250% increase in income was a substantial and unanticipated change).

8

In comparison, other circuits have held that plan modifications are essentially discretionary and that no substantial and unanticipated change in the debtor's financial circumstances need be shown. *In re Meza*, 467 F.3d 874, 878 (5th Cir. 2006); *Barbosa v. Solomon*, 235 F.3d 31, 41 (1st Cir. 2000) (investment property sold for 215% of its stipulated value); *In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994) (no abuse of discretion to approve modification which increased distributions to creditors who filed proofs of claim, after some creditors failed to file claims); *see also In re Gallagher*, 332 B.R. 277, 281 (Bankr. E.D. Pa. 2005) (discussing two views on the requirement of changed circumstances for plan modification).

Third Circuit precedent guides my decision on whether or not to require a substantial and unanticipated change in a debtor's financial circumstances, at least where a modification is sought by a non-debtor party. *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989), teaches about the binding effect of a confirmed plan. In that case, a secured creditor, who had not objected to confirmation, sought to revoke confirmation. The secured creditor argued that the "present value" requirement had not been met regarding the treatment of its claim. *Id.* at 1412. The court found that the finality underlying § 1327 creates a binding effect on parties, even when a plan fails to comply with § 1325(a) of the Code. *Id.* at 1411-13. The Court also noted that confirmation of a Chapter 13 plan, absent fraud, is res judicata as to all issues which were, or could have been, decided at the time of confirmation. *Id.* at 1408.

This binding effect, even in the face of non-compliance with the Federal Rules of Bankruptcy Procedure, was reiterated in the recent Supreme Court case *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 176 L. Ed.2d 158 (2010). In *Espinosa*, the Supreme

9

Court declined to allow an attack on a prior confirmation order even while expressing concern over potential "bad-faith litigation tactics" associated with proposing plans that do not comply with the requirements of the Federal Rules of Bankruptcy Procedure. *Id.* at 1382.

In prior decisions, I have tried to give due regard to the binding nature of confirmed plans. *See, e.g.*, *In re Caruso*, 433 B.R. 135, 138 (Bankr. M.D. Pa. 2010). I believe it is important to reconcile § 1329, which appears to readily provide for plan modifications, with § 1327. Section 1327 provides that the general effect of plan confirmation is to bind the debtor and creditors to the terms of the plan.

Furthermore, pursuant to § 1327, confirmation, except as otherwise provided in the plan, vests property of the estate in the debtor. *In re Michael*, 699 F.3d 305, 309 (3d Cir. 2012); *Szostek*, 886 F.2d at 1409; *In re Sanitate*, 415 B.R. 98, 101 (E.D. Pa. 2009).

I find that requiring some threshold showing before allowing a modification, particularly, as here, one brought by a non-debtor party, is consistent with the general finality of confirmation as codified in § 1327.

A bankruptcy court decision in the Third Circuit has required a showing of a material change in circumstances which was not anticipated at the time of confirmation. Judge Deller considered such a plan modification in *In re Mellors*, 372 B.R. 763 (Bankr. W.D. Pa. 2007). There, the confirmed Chapter 13 plan provided that the debtors would retain their used car and make payments to the secured creditor. Shortly after confirmation, the debtors learned that the car had a cracked frame and would not pass the required state inspection and "the cost of repairing the frame would be several thousand dollars." *Id.* at 767. The *Mellors* debtors then filed a modified plan which provided for surrender of the car to the secured creditor in

satisfaction of any secured claim. The secured creditor objected to the modified plan on several grounds. Judge Deller noted:

> [T]he Court is faced with the difficult task of balancing the finality of a confirmed Chapter 13 plan . . . against the terms and conditions of 11 U.S.C. § 1329(a), which permits post-confirmation modification of Chapter 13 plans in certain situations.

*Id.* at 768. Judge Deller went on to discuss the two lines of cases I mentioned above: one line holding that there is no threshold requirement of a change in circumstances as a basis for plan modification and the other line holding that an unanticipated material change is required. *Id.*

Additionally, *Mellors* notes the lack of defined standards to determine what does or does not constitute a material or substantial change in circumstances. *Id.* at 770-71. Judge Deller struck a balance between the finality suggested by § 1327 and malleability suggested by § 1329 writing:

> This Court agrees with the determination that a debtor does not have an absolute right to modify a confirmed Chapter 13 plan. Instead, as a prerequisite to a § 1329(a) modification analysis, the party seeking the post-confirmation modification must first demonstrate that the debtor has experienced a substantial or material, unanticipated change in his or her circumstances that warrants modification. Where this standard is met, *res judicata* will not preclude debtors from seeking a modification. The Court reaches this conclusion because confirmation of a Chapter 13 plan must result in a significant degree of finality as set forth in 11 U.S.C. § 1327(a); the language of § 1329(a) should not unnecessarily dilute the integrity of confirmation by permitting repetitive modification without cause.

*Id.* at 771. The *Mellors* court ultimately held that the modification was proper, and overruled the secured creditor's objection. *Id.* At 777.

11

### D. Reading the Bankruptcy Code as a Whole

There is some inherent tension between §§ 1327 and 1329 of the Bankruptcy Code. Section 1327 gives binding effect to a confirmed plan and suggests there is some finality to the confirmation order. Section 1329 suggests that a plan modification is freely allowed, and is not subject to as many statutory requirements as a plan confirmation.

I agree with Judge Deller that it is important to reconcile §§ 1327 and 1329. To do so is, *inter alia*, consistent with a principle of statutory construction. Statutory construction is a holistic endeavor; this is especially true of the Bankruptcy Code. Courts should not look at a single sentence, or portion thereof; rather, guidance should be drawn from the provisions of the whole law, as well as its object and policy. *In re Vista Care Group, LLC*, 678 F.3d 218, 231-32 (3d Cir. 2012); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 108 S. Ct. 626, 630 (1988); *In re Taylor*, 399 B.R. 115, 119 (Bankr. M.D. Pa. 2008).

Requiring some threshold showing to sustain the Modification Motion serves the finality I believe Congress intended from the language of § 1327. My colleague, Judge Thomas, has previously suggested that plan modification may be appropriate

> [i]f during the life of the plan it becomes apparent that the plan payments do not fairly equate to the debtor's then present income after expenses, § 1329 is available to implement a modified plan, thus preventing a windfall in favor of the debtor.

*In re Vidal*, 418 B.R. 135, 139-40 (Bankr. M.D. Pa. 2009). Avoiding complex tests to reach the modification threshold fosters the flexibility which I believe Congress intended from the wording of § 1329. I find that this approach makes §§ 1327 and 1329 consonant with one another and with the overall Chapter 13 structure and process.

12

### E. Feasibility

In Section C above, I discussed the statutory scheme under which plan modifications are subject to fewer statutory requirements than are plan confirmations. It is clear that the Modification Motion is subject to the requirements of § 1325(a). *In re Lopatka*, 400 B.R. at 439-40.

Section 1325(a) includes what is often referred to as the feasibility requirement. Namely, "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6); *In re Zavala*, 366 B.R. 643, 654 (Bankr. W.D. Tex. 2007).

Generally, visionary or speculative Chapter 13 plans will not meet the feasibility standard. It is a court's role to make a factual determination as to the plan's "reasonable likelihood of success." *In re Ellis*, 2006 WL 1555692, at *5 (Bankr. E.D. Pa. May 16, 2006); *In re Askem*, No. 05-20092REF, 2007 WL 1056724, at *3 (Bankr. E.D. Pa. April 3, 2007). The Bankruptcy Court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan. *In re Buccolo*, 397 B.R. 527, 530 (Bankr. D.N.J. 2008). The *Askem* court described feasibility as requiring a showing that, "it is likely that the debtor will have the necessary resources to make all payments as directed by the plan." *Askem*, 2007 WL 1056724, at *3.

Judge Fox, in the Bankruptcy Court for the Eastern District of Pennsylvania, has noted:

> Typically, a chapter 13 debtor meets her burden of demonstrating the viability of a chapter 13 plan based upon future income by showing a stable employment history, present employment, and a current income level sufficient to make proposed plan payments.

*In re Scott-Gage*, No. 05-10069bf, 2008 WL 724769, at *4 (Bankr. E.D. Pa. March 17, 2008)

13

(internal citations omitted).

Here, the Trustee is the proponent of the Modification Motion. Thus, it is his burden to show compliance with § 1329(b)(1), including feasibility. *In re Fiddler*, No. 04-4213, 2007 WL 4510308, at *2 (Bankr. N.D.W. Va. Dec. 18, 2007); *In re Wetzel*, 381 B.R. 247, 254 (Bankr. E.D. Wis. 2008). I note that the Trustee did not introduce any financial projections in support of the Modification Motion. In fact, the only witnesses at the hearing on the Modification Motion were Mr. and Mrs. Eckert.

## IV. Conclusion

What has been shown to support the Modification Motion? Only that for approximately three months before the hearing on the Modification Motion, Mr. Eckert's earnings increased by approximately 36%. Based upon this, the Trustee seeks an increase in the plan payment of 500%.

I conclude that the Modification Motion must be denied. The present facts are clearly distinguishable from those considered by the Fourth Circuit in *In re Arnold*, 869 F.2d 240 (4th Cir. 1989), where the debtors' earnings increased 250% and the Trustee sought a 90% increase in the plan payment. Here, the amount of the increase sought by the Trustee is disproportionate to the rise in Mr. Eckert's earnings.

The record demonstrates that Mr. Eckert is a conscientious worker. His first scheduled personal day off from Employer 3 was the day of the hearing on the Modification Motion. Trial Tr. vol. 1, 15-16, August 28, 2012. No matter how conscientious he is, his continued employment, at the higher earning rate, remains subject to the vicissitudes of the workplace.

Mr. Eckert is not a long-term employee who, post confirmation, received a promotion

14

with a substantial pay raise. Rather, Mr. Eckert is an hourly employee. Over the course of one year and nine months, his work history includes being unemployed, beginning one job which ended after several months, and then beginning another job.

The lack of stability in Mr. Eckert's employment and, consequently, his earnings, militates against the Modification Motion in two ways. First, it magnifies the disproportionality of the amount of the plan payment increase sought by the Trustee. Second, the lack of stable employment leads me to conclude that the Modification Motion does not meet the feasibility requirement. I find that there is a lack of a reasonable likelihood that the Debtors would be able to make the plan payments called for in the Modification Motion.

The above factors also lead me to conclude that Mr. Eckert's income increase, under these circumstances, does not represent a substantial and unanticipated change which warrants the requested modification.

For all the above reasons, the Modification Motion is denied. An Order will be entered consistent with the foregoing Opinion.

By the Court,

_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: January 14, 2013